E. C. CHIPMAN, JR., and AGNES CHIPMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chipman v. Commissioner
Docket No. 13980-78.
United States Tax Court
T.C. Memo 1981-194; 1981 Tax Ct. Memo LEXIS 550; 41 T.C.M. (CCH) 1318; T.C.M. (RIA) 81194; April 22, 1981. *550 Held, amount of charitable contribution deductions determined. Held, further, dry rot caused petitioners' patio roof to collapse on a windy day, and petitioners are not entitled to a casualty loss deduction for the resulting damage. E. C. Chipman, Jr., pro se. Roger D. Osburn, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' income *551 tax for 1976 in the amount of $ 951.51. Due to concessions by both parties the issues are (1) whether petitioners are entitled to a casualty loss deduction as a result of the collapse of their patio roof, and (2) the amount allowable to petitioners as a deduction for charitable contributions. FINDINGS OF FACT Petitioners are husband and wife who lived in Jacksonville, Fla., at the time their petition herein was filed. They filed a joint Federal income tax return for 1976 with the Internal Revenue Service Center, Chamblee, Ga.
E. C. Chipman, Jr. (hereinafter petitioner) was employed as a sales representative of the Ford Division of Ford Motor Co. in 1976, which employment required him to travel out of town on numerous occasions. Petitioner was reimbursed for his travel expenses in cash when he returned home at the end of the week. Thus petitioner usually had a good bit of cash available over the weekends. Petitioner and his elderly mother were members of the Lakewood Presbyterian Church, which is about 10 miles from petitioner's home, but petitioner regularly attended the Highland Presbyterian Church which was near his home. Petitioner made contributions to the latter church *552 in cash when he attended. Agnes Chipman was a number of the Holy Spirit Catholic Church, which she attended regularly, and paid her pledge to that church by checks. On their 1976 return petitioners claimed deductions totaling $ 2,349 for charitable contributions. The itemized contributions were $ 1,775 to churches, $ 60 for Jax Ballet Theater, $ 75 for Greater Jacksonville Opera, $ 150 for Heart Fund, Diabetic Assn. and Cancer Society, $ 125 for Goodwill and Salvation Army, $ 84 for United Fund, $ 40 for Bishop Kenny Development Fund. The contribution to churches included $ 1,275 to the Holy Spirit Catholic Church and $ 500 to Highland Presbyterian Church. Respondent allowed $ 1,290 contributed to the Catholic Church by check, $ 52 for cash contributions to the Presbyterian Church, and at trial conceded the $ 84 contributions to the United Fund. Respondent disallowed the remaining contribution deductions for lack of verification. At the trial petitioner offered no evidence with respect to the charitable contributions except for the additional $ 448 deducted for his cash contributions to the Presbyterian Church, so we assume petitioners have conceded the other amounts. In any *553 event petitioners failed to prove they were entitled to deduct the other items. [1]
On January 9, 1976, a windy day, the patio roof attached to petitioners' porch collapsed, completely demolishing the roof and damaging items of furniture and paving under it. Petitioner had an estimate made of the cost of repairing the patio, which was $ 1,600. Petitioner filed a claim for the loss with his insurance company. An agent of the insurer asked a contractor to look at the damage, determine the cause of the collapse, and estimate the cost of repair. The contractor viewed the premises and reported that the cause of the collapse of the patio roof was excessive dry rot in the pillars, eaves, and where the roof was attached to the house. He estimated the cost of repairs to be $ 1,400. A Field *554 Claims Specialist of the insurance company also examined the damaged property and confirmed that there was excessive dry rot in the roof caused, in all probability, by the fact that the roof was flat and was covered with self-sealing shingles that were intended for a sloping roof, which permitted water to seep under the shingles and remain trapped for considerable periods of time. He also concluded that the excessive dry rot caused the collapse of the roof. The insurance company denied petitioners' claim for damage to the patio roof but did pay petitioners $ 550 for damage to personal property, the pool deck, and for removing the debris. Petitioners apparently settled their claim on that basis. Petitioners deducted $ 950 ($ 1,600 less $ 550 settlement less $ 100 floor) as a casualty loss on their 1976 return. Respondent disallowed the entire amount for the reason that "normal progressive deterioration is not deductible as a casualty loss." OPINION While petitioner's evidence was not the best, we are convinced from his testimony and the fact that he attended church regularly that Edward C. Chipman, Jr., contributed considerably more than an average $ 1 per week to the church *555 he attended. He testified that he contributed $ 10 in cash each time he attended church and that he attended regularly but he had no other evidence to support his testimony except a letter from the minister stating that petitioner had been a regular attender and contributor to the church. No amounts were mentioned in the letter. Using our best judgment but bearing heavily on petitioner who failed to produce any recorded evidence of the amount of his contributions, we conclude that petitioner contributed $ 252 in cash to his church in 1976. Thus petitioners are entitled to an additional $ 200 charitable contribution deduction over the amounts allowed and conceded by respondent. We agree with respondent, howeer, that petitioners are not entitled to a deduction for the damage to their patio roof as a casualty loss. Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c)(3) limits such losses for individuals to: (3) Losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. Such losses are allowed only *556 to the extent that they exceed $ 100 for each casualty. Case law amply supports respondent's position that losses due to progressive deterioration over a period of time are not deductible as casualty losses. ; . [2] The term "casualty" as used in section 165(c)(3) has been defined as an "accident, a mishap, some sudden invasion by a hostile agency." . Since we have no evidence of when the dry rot in petitioners' patio started, we could not find that, if the damage was caused by the dry rot, it met the standard of suddenness that is required for a casualty loss. , affd. . Thus the issue is a factual one, whether the damage to the roof was caused by the dry rot or by the wind. If it was caused by a windstorm or unexpected sudden gusts of heavy wind, it would qualify as a casualty loss. See . *557 Based on the evidence presented, we must conclude that the collapse of the patio roof was caused by dry rot, rather than the wind. Respondent offered the testimony of two witnesses, experienced in determining the causes of damage to structures, both of whom examined the property soon after the collapse and concluded that the collapse was caused by the dry rot. Petitioner's only evidence was his own testimony that it was a gusty day and he heard the wind blowing at about the time the roof collapsed. He did not see the roof fall so he could not testify directly that the wind caused the roof to fall. On the other hand, there is ample evidence that there was sufficient dry rot in the patio to cause the roof to collapse, even without the help of the wind. The wind may have been a factor but we believe the direct cause of the collapse was the dry rot. At least petitioners have not proved that the wind was directly responsible for the fallen roof, which they must do to win this issue. We said in , a case in which there was a question of whether damage to a sailboat was occasioned by wind and heavy weather or by ordinary *558 wear and tear, "a taxpayer, in order to prove that he is entitled to a deduction for a casualty loss, must show that his property was damaged by or as a proximate result of a fire, storm, shipwreck, or other casualty, and the amount of the loss resulting from the casualty as distinguished from other causes." Petitioners have failed to carry their burden of proof on this issue and we hold for respondent on the casualty loss issue. Decision will be entered under Rule 155. Footnotes
1. The record was left open for petitioners to present written evidence of the contributions to other charitable organizations. We were somewhat surprised that petitioners did not present canceled checks or written acknowledgements to provide their claimed contributions to such organizations as the Heart Fund, Cancer Society, Salvation Army, Diabetic Association, and the Development Fund.↩
2. Also see .↩